HELEN CAHILL, Plaintiff-Appellant, v. HARB BOURY *et al.*, Defendants-Appellees.

Second District No. 2—85—0022

Opinion filed June 11, 1986.

414

Robert E. Dyer and Reese J. Peck, both of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellant.

Lenard C. Swanson, Ruth E. VanDemark, and David J. Bressler, all of Wildman, Harrold, Allen & Dixon, of Chicago, for appellees.

JUSTICE SCHNAKE delivered the opinion of the court:

This case involves a medical malpractice claim filed by plaintiff, Helen C. Cahill, in the circuit court of Du Page County. Named as defendants were Dr. Harb Boury and Dr. J. George Handley. At the close of the evidence, the jury returned a verdict in favor of defendants, and plaintiff filed this appeal arguing that defense counsel's numerous acts of misconduct denied her a fair trial.

Plaintiff's complaint, filed on April 28, 1982, alleged that defendants negligently performed an operation known as an anterior cervical discectomy and fusion on August 20, 1981. Plaintiff alleged in part that defendants negligently inserted and removed a retractor causing plaintiff's vocal nerves to be stretched or cut and negligently failed to inform plaintiff of the risk of losing, in whole or in part, her normal ability to speak. On July 25, 1984, plaintiff amended her complaint to add the allegation that defendants failed to pursue conservative treatment before operating and performed and operation that was not necessary or compatible with her symptoms.

The case proceeded to trial in August of 1984 and lasted eight days. At the conclusion of the evidence, the jury returned a verdict in favor of defendants. Plaintiff filed a post-trial motion requesting a new trial on September 19, 1984. The motion was denied on December 5, 1984, and plaintiff filed this appeal on January 4, 1985.

■■ ■ Plaintiff asserts that defense counsel made a total of 20 improper and prejudicial remarks and statements during closing arguments. After careful consideration of the record in this case, we find that some of defense counsel's arguments may have been improper. We also find, however, that plaintiff failed to object to seven of these arguments, and her failure to object must be considered a waiver of her objections. (*Chloupek v. Jordan* (1977), 49 Ill. App. 3d 809, 817.) Further, the trial court sustained plaintiff's objections and instructed the jury to disregard eight of the arguments. The trial court's act of sustaining the objections and instructing the jury is deemed to have corrected any prejudice to plaintiff. *People v. Baptist* (1979), 76 Ill. 2d 19, 30.

Plaintiff argues that where such prejudicial arguments of counsel affect the case to the extent that a litigant is denied a fair trial, such errors may be considered and a new trial may be ordered even though the party did not object (*Manninger v. Chicago & Northwestern Transportation Co.* (1978), 64 Ill. App. 3d 719, 729-30) or the court sustained the objection (*Mileur v. Briggerman* (1982), 110 Ill. App. 3d 721, 727). While we do not disagree with plaintiff's statement of the law, our review of the record shows that defense counsel's alleged prejudicial arguments did not rise to the level of denying plaintiff a fair trial. Therefore, we will specifically address only those five issues not waived or cured below.

The first allegedly prejudicial remark occurred during plaintiff's closing argument. After attempting to explain away an inconsistency between plaintiff's trial testimony and her pretrial deposition, plaintiff's counsel asked, "Is there anybody in this courtroom that does not think that lady [plaintiff] is telling the truth under oath? Is there anybody?" Thereupon, defense counsel stood up and responded, "I don't." Plaintiff's request that the remark be stricken was overruled on the basis that the remark was invited. Plaintiff argues that the remark was meant to embarrass counsel and was a direct attack on plaintiff's credibility unsupported by any evidence.

■■ We agree that the remark was improper, but find that error harmless. Plaintiff's counsel asked a rhetorical question which defense counsel should not have responded to until his own closing argument. Defense counsel's remark, however, did not destroy or seriously jeop-

ardize plaintiff's ability "to obtain respectful consideration at the hands of the jury" as she argues. Further, while defendants' attack on plaintiff's credibility may have been premature, it was based on the evidence. Plaintiff's trial testimony and pretrial deposition were inconsistent on the critical issue of whether plaintiff had felt pain in her arms prior to the surgery.

 The second allegedly prejudicial statement occurred during defendants' closing argument when defense counsel stated:

> "[A]nd when that original Complaint, which has never been amended to this date, was filed there was no single charge or complaint saying that the surgery was unnecessary or that it should not have been performed on the charges as outlined in the Complaint."

Plaintiff immediately corrected defense counsel stating that an amendment had been filed approximately three weeks before trial. After defense counsel responded that the amendment was not in the court file, the trial court stated that "[t]he record should reflect that there was an amended complaint adding that." While plaintiff argues that defense counsel did know of the amendment, plaintiff fails to present any evidence that counsel's misstatement was not innocently made as he claims. Further, any prejudice to plaintiff was corrected by the court's statement that the complaint had been amended.

Defendants' closing arguments then continued:

> "Why is it then that just three weeks ago, for the first time in this case, a complaint is made saying the surgery was unnecessary, you should have had more conservative therapy? And I will tell you why. It is because in May, 1982—
>
> MR. DYER: Pardon me, your Honor.
>
> None of these things are before the Court. He is going in things that aren't supportive of that, aren't in evidence, your Honor. It is not proper argument.
>
> &#42; &#42; &#42;
>
> THE COURT: I am going to overrule. I will take judicial notice—I am going to overrule the objection.
>
> You may proceed. He is referring to the court file.
>
> MR. SWANSON: On September—
>
> MR. DYER: He is referring—he is referring to the deposition.
>
> MR. SWANSON: I read the admission from that.
>
> THE COURT: Let me get the next statement.
>
> MR. SWANSON: I read the admission. I am referring to the deposition from which I read the admission of the plaintiff.

THE COURT: Oh, okay."

Plaintiff argues that defense counsel's attack on the good faith of her amendment of the complaint was improper under *Yuckman v. Considine* (1912), 175 Ill. App. 613.

In *Yuckman*, a real estate broker sued for recovery of commissions. During trial the evidence developed an additional defense not pleaded prior to trial. The court denied defendant's request to amend his affidavit stating, "Never mind. The evidence on those points is in without objection, and I presume it will stand." Thereafter, during closing argument the broker read from defendant's affidavit and commented that the new defense was not listed in it, but had sprung out of the clever mind of the defense counsel after the trial had begun. The appellate court reversed the cause stating:

> "If the mere fact that one amends his pleading after trial and before judgment, which often becomes necessary either through surprise during the trial or through counsel's misapprehension of the law or the facts when drawing the original pleading, lays his good faith in so doing open to an assault before the jury, the benefit from the right to amend in many instances would be lost, and the value of it seriously impaired. [Citation.] *Whether a defense is presented in good faith may be questioned on proper evidence in the case, but it is not subject to attack merely because there has been a change in the pleadings.*" (Emphasis added.) *Yuckman v. Considine* (1912), 175 Ill. 613, 615.

While we agree with defendants that *Yuckman* is technically distinguishable from the present case in that it involved adding a defense after the trial had begun rather than adding a new theory of recovery prior to trial, we find the general rule stated therein to be applicable in this case. The value of the right to amend, either before or during trial, would be seriously impaired if the good faith of the amendment was open to attack merely because the pleadings had been changed.

In the present case, however, defendants did not question the good faith of plaintiff's new theory of recovery merely because plaintiff amended her complaint shortly before trial. Rather, defendants attacked the good faith of plaintiff's new theory of recovery on the basis that it was inconsistent with her pretrial deposition. Under plaintiff's third theory of recovery, defendants were negligent because they performed a premature and unnecessary operation. This was based on plaintiff's expert witness, Dr. Bernard J. Sussman, who testified that surgery was not necessary if plaintiff had not been experiencing pain in her arms. Plaintiff stated in her pretrial deposition, however, that she did experience pain in her arms prior to surgery. Since defendants'

argument was based on proper evidence and not merely on the fact that plaintiff amended her pleadings shortly before trial, defendants' argument was not improper.

■■ Also, during his closing argument defense counsel attempted to bolster the credibility of defendants' expert witness, Dr. Nicholas Wetzel, stating:

"Dr. Wetzel is an old-time fellow and he has kept up with the methods. He has kept up with the changes in his field, a partner to Lyle [sic] Davis, some of you may recognize President Reagan's father-in-law."

Plaintiff argues that this argument improperly injected political questions into the trial and was not based on the evidence. Defendants, while conceding that the argument was not "directly established" by the evidence, argue that there was no prejudice to plaintiff because she has not shown that the jurors were Republicans and because the argument was not directed to the political beliefs of anyone involved in the prosecution or defense of this case.

Defense counsel's argument was improper. It injected political affiliation into the trial to bolster a defense witness (see *Vandaveer v. Norfolk & Western Ry. Co.* (1966), 78 Ill. App. 2d 186, 208; *Bulleri v. Chicago Transit Authority* (1963), 41 Ill. App. 2d 95, 102) and was unsupported by any evidence. We find, however, that the error was harmless. Counsel's argument might have bolstered Dr. Davis' credibility, but Dr. Davis did not testify. The bolstering of Dr. Wetzel's testimony by the fact that he is a partner of the President's father-in-law is both indirect and tentative and unlikely to seriously prejudice plaintiff.

■■ Plaintiff next argues that defense counsel mischaracterized the testimony of her expert witness, Dr. Sussman. Dr. Sussman testified that to perform the surgery safely, three vertebral bodies would have to be exposed and visible. Dr. Sussman admitted that for Dr. Boury to have placed a marker needle in C6/C7 space as he did, Dr. Boury would have had to expose at least the top of the C7 vertebra. In referring to Dr. Sussman's testimony during closing argument, defense counsel stated:

"And in order to put that needle in, don't you have to see C7, this seventh vertebra?

He [Dr. Sussman] said, 'Yes.' "

Plaintiff objected on the basis that that was not what Dr. Sussman had testified to. The trial judge stated he did not recall the testimony, overruled the objection, and instructed the jury that they would have to draw on their own memories of what Dr. Sussman had testified to. Defense counsel continued, stating:

"My recollection is he said, 'In order to put it in, you have to visualize at least the top of C7.' "

We find no error in defense counsel's argument. Dr. Sussman did testify that to put in a marker needle, the C7 vertebra would have to be visible. While defense counsel originally failed to state that it was only the top of the vertebra that would have to be visible, counsel did not state that the entire vertebra would have to be visible as plaintiff argues. At best, defense counsel's first remark was ambiguous as to how much of the vertebra had to be visible. Any such ambiguity was removed by counsel's second statement which made it clear that only the top of the vertebra would have to be visible. Further, even if defense counsel had mischaracterized Dr. Sussman's testimony, any error would have been cured by the trial court's instruction that they should rely on their own memory of the evidence. *People v. Mack* (1984), 105 Ill. 2d 103, 132.

■ Plaintiff similarly argues that defense counsel also mischaracterized Dr. Sussman's testimony on whether permanent hoarseness was one of the risks involved in the operation. During closing argument defense counsel stated that when Dr. Sussman listed the numerous complications that could arise from the operation, including hoarseness, he did not state whether the risk of hoarseness was temporary or permanent. Defense counsel then went on to note that while Dr. Sussman subsequently testified that the risk of hoarseness could be permanent, he testified so only in response to plaintiff's leading question. Plaintiff argues that this was a misstatement of the testimony because Dr. Sussman did, in fact, testify that there was a risk of permanent hoarseness.

Our review of the record shows that Dr. Sussman did testify that permanent hoarseness was one of the risks that could arise as a result of the operation. When he originally listed the risks of the operation, however, Dr. Sussman did not clearly state whether the risk of hoarseness was temporary or permanent. He then testified, in response to a leading follow-up question by plaintiff's counsel, that the risk of hoarseness could be permanent. Defense counsel's argument is not to the contrary and did not misstate Dr. Sussman's testimony.

For the reasons set forth herein, the judgment of the circuit court of Du Page county is affirmed.

Affirmed.

UNVERZAGT and STROUSE, JJ., concur.