ELOUISE WEBB, Plaintiff-Appellant, v. RICHARD T. ANGELL *et al.*, Defendants-Appellees.

Second District   No. 2—86—0297

Opinion filed May 18, 1987.

Philip J. McGuire, of Dowd & Dowd, Ltd., and Philip F. Maher, both of Chicago, for appellant.

John W. Duncker and William F. Cunningham, both of O'Reilly, Cunningham, Duncan & Huck, of Wheaton, and Lenard C. Swanson, Ruth E. VanDemark, and Richard C. Palmer, all of Wildman, Harrold, Allen & Dixon, of Chicago, for appellees.

JUSTICE HOPF delivered the opinion of the court:

This is an appeal from entry of judgment on a jury verdict which found the defendants, Dr. Richard Angell and Dr. Richard Nelson, not guilty of medical malpractice in their care and treatment of the plaintiff, Elouise Webb. Plaintiff alleges that: (1) she was denied a fair trial by prejudicial argument and misconduct by defense counsel; (2) the trial court abused its discretion by refusing to give four jury instructions tendered by plaintiff; and (3) the trial court abused its discretion by making certain evidentiary rulings.

Plaintiff, Elouise Webb, turned to reach for tissue in her bathroom on the morning of December 27, 1974, and was suddenly stricken with an extremely painful headache and vomiting. She was taken to the hospital by ambulance and examined in the emergency room by Dr. Carbon, her family physician, and Dr. Cox. Plaintiff had an exten-

sive and lengthy history of neck and head ailments prior to this incident, including two whiplash injuries in the preceding six years. She was afflicted with degenerative arthritic changes in the cervical spine and had been treated repeatedly for neck and head pain in 1973 and 1974. Both Dr. Cox and Dr. Carbon concluded that plaintiff was suffering from the arthritic condition in her cervical spine, and Dr. Carbon referred her to Dr. Angell, an orthopedic surgeon.

Dr. Angell began a course of treatment for the condition in plaintiff's neck. He continued this treatment for several days. On December 28, 29, and 30, plaintiff seemed to improve, but the headaches persisted. For the next two days plaintiff complained off and on about headaches, and her condition did not appear to change significantly. On January 2, 1975, plaintiff complained of a persistent severe headache, and Dr. Angell called in defendant Dr. Nelson, a neurologist. Dr. Nelson gave plaintiff a neurological examination, reviewed her medical history, and recommended continuation of treatment for the arthritis in her neck.

On January 3, 1975, plaintiff complained of severe headaches, nausea, and sensitivity to light. Dr. Nelson did another neurological exam and again recommended continuation of the treatment she had been receiving. Plaintiff was reported to be feeling better on January 4, but worse on January 5, complaining of aches all over her body. Dr. Nelson ordered an electroencephalogram. The next evening, January 6, plaintiff suffered a hemorrhage from a ruptured aneurysm in her head and went into a coma which lasted for six days.

Subsequently, plaintiff brought suit against Dr. Angell and Dr. Nelson alleging that they negligently failed to diagnose and treat an aneurysm prior to January 6, 1975.

At trial, testimony was given by numerous witnesses including plaintiff, both physician-defendants, and expert witnesses for all parties. The jury found the defendants not guilty of medical malpractice. Plaintiff's post-trial motion was denied, and this appeal was then timely filed.

Defendants have filed a motion to strike all or part of plaintiff's appellate brief, asserting that it does not comply with the Supreme Court Rule 341(e)(7) requirement that argument in an appellant's brief must cite to supporting authority and the pages of the record relied on. (87 Ill. 2d R. 341(e)(7).) After reviewing the allegations and support thereof in defendants' motion, as well as plaintiff's responses to those allegations, we conclude that the motion to strike should be granted, not as to the entire brief, but as to the specific arguments and factual assertions challenged by the motion. The matter stricken

will not be considered in our resolution of the issues before us.

■■■ Plaintiff's first contention is that prejudicial argument and misconduct by defense counsel denied her a fair trial. In her brief, she sets forth seven specific instances of alleged impropriety by defense counsel. The allegations of one of those instances has been stricken pursuant to our grant of defendants' motion mentioned above. As for the remaining allegations, after careful consideration of the record before us, we conclude that some of defense counsel's conduct and argument may have been at least questionable. We also find, however, that plaintiff failed altogether to object to one of those arguments and failed to object to a major segment of another. Her failure to object is considered a waiver of objections. (*Cahill v. Boury* (1986), 144 Ill. App. 3d 413, 415, 494 N.E.2d 256.) In addition, the trial court sustained plaintiff's objections in regard to two other matters and instructed the jury to disregard counsel's improper comments. When the trial court sustains the objections and instructs the jury to disregard, any prejudice to plaintiff is deemed to have been cured. 144 Ill. App. 3d 413, 415, 494 N.E.2d 256.

Plaintiff insists that when the argument and misconduct of counsel is so prejudicial as to deny a litigant a fair trial, the instances of misconduct may be considered despite the failure to object and despite corrective steps taken by the trial judge. Plaintiff correctly states the law. (*Mileur v. Briggerman* (1982), 110 Ill. App. 3d 721, 727, 442 N.E.2d 1356; *Manninger v. Chicago & Northwestern Transportation Co.* (1978), 64 Ill. App. 3d 719, 729-30, 381 N.E.2d 383.) In the instant case, however, we are persuaded by our review of the record that the relevant behavior of counsel was not so prejudicial as to have denied plaintiff a fair trial. Therefore, we will address only the three challenged occasions of misconduct which were neither waived nor cured at trial.

Plaintiff first complains that counsel for Dr. Nelson manufactured a defense for his client during closing argument to the jury. In the argument complained of counsel described the successive steps in a neurologist's diagnostic work-up for a patient such as plaintiff. One of the steps mentioned was a spinal tap. Counsel explained that caution would be exercised in deciding when to do a spinal tap since a problem in the spine, such as plaintiff's osteoarthritis, might require a myelogram to be done. Timing was important where a myelogram might be necessary since, once a spinal tap was done, a myelogram could not be done for about two weeks. Plaintiff objects to this argument because a spinal tap is the necessary procedure for determining if a patient is bleeding in the brain. She asserts that pointing out the

timing problem between a myelogram and a spinal tap was improper since the evidence showed that Dr. Nelson had not considered doing a spinal tap on plaintiff prior to the January 6 rupture. She also asserts that there was no evidence that plaintiff had a herniated disc which would require a myelogram. Plaintiff concludes that counsel's argument provided an unfounded excuse for nonperformance of a spinal tap.

■ We note first that plaintiff did not object to counsel's overall argument at trial. There was, however, objection to a remark that if Dr. Nelson had done a spinal tap and it proved to be error, the doctor would be in court over that issue. The objection was immediately sustained, and the jury instructed to disregard the comment. Thus, any prejudice from that specific remark was cured. (*Cahill v. Boury* (1986), 144 Ill. App. 3d 413, 415, 494 N.E.2d 256.) As for the rest of the argument, even if we do not consider it waived, we find no impropriety.

■ During closing argument counsel is entitled to argue the evidence and all reasonable inferences which may be drawn from it. (*Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 484, 473 N.E.2d 1322.) In our opinion that is what counsel did here. The evidence showed that Dr. Nelson's approach was to begin his diagnostic work-up with the least invasive procedures and progress, step by step, through more invasive techniques. A spinal tap was shown to be more invasive and generally more risky than the steps which preceded it. It was also shown that in a case like plaintiff's, where spinal problems already existed, the normal routine would be to do a spinal tap and myelogram as part of the same procedure since performance of a spinal tap first would necessarily postpone the myelogram. Finally, there was evidence from defendants' experts that a spinal tap was not indicated for plaintiff prior to the evening of January 6, 1975.

Counsel's argument first followed the step-by-step progression of the diagnostic work-up previously put into evidence. Counsel then argued that this progressive treatment approach showed reasonable care on Dr. Nelson's part in trying to figure out what was wrong with plaintiff. When he pointed out that a spinal tap would cause postponement of a myelogram, it was merely to show that Dr. Nelson's view that the two tests should be done as part of one procedure was appropriate and reasonable for a patient with plaintiff's severe spinal problems. Counsel never said Dr. Nelson actually considered doing a myelogram or that he believed a myelogram was necessary. Nor did he infer that the doctor had not done the spinal tap because he knew he was going to do the myelogram. In fact, it is unquestioned that the

reason the doctors did not do a spinal tap to confirm the existence of an aneurysm prior to January 6 is that they did not believe plaintiff had a bleeding aneurysm prior to January 6. The only thing being inferred by counsel was that Dr. Nelson's course of treatment met the standard of reasonable care required for a patient like plaintiff. We do not find this improper behavior for defense counsel.

Plaintiff's last two objections to counsel's conduct are related to repeated objections by counsel for Dr. Angell during direct examination of plaintiff's expert, Dr. Chessick, and testimony by one of Dr. Nelson's experts regarding awards he had received during his service in Vietnam. Neither argument, however, contains sufficient citation to the record for us to resolve plaintiff's challenges.

■■ ■ Supreme Court Rule 341(e)(7) (87 Ill. 2d R. 341(e)(7)) requires that argument in an appellant's brief include citation of the authorities and pages of the record relied on. Here, neither argument offers citation to any authority. One argument cites page numbers where the allegedly objectionable material can be found but does not indicate which of the 15 volumes of the Report of Proceedings should be consulted. The other argument is totally devoid of citations to the record. Strict adherence to Rule 341(e)(7) is necessary to expedite and facilitate the administration of justice. (*Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42, 48, 463 N.E.2d 216.) A reviewing court is not obligated to search the record for evidence on which to base a reversal, and, unless reference is made to those portions of the record supporting reversal, the argument will not be considered. (*Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 802, 405 N.E.2d 1051.) Accordingly, we decline to consider these last two aspects of plaintiff's argument based on prejudicial conduct by defense counsel.

■■ ■ Plaintiff's next category of asserted error is the trial court's refusal to give four jury instructions tendered by her. A trial court has considerable discretion in determining which issues have been raised by the trial evidence and in determining the form in which a jury instruction shall be given. (*Ralston v. Plogger* (1985), 132 Ill. App. 3d 90, 98, 476 N.E.2d 1378.) The propriety of an instruction depends on whether all of the instructions, considered as a whole, were sufficiently clear so that the jury was not misled, and only where it is obvious the jury was misled has there been reversible error. (*Willson v. Pepich* (1983), 119 Ill. App. 3d 552, 558, 456 N.E.2d 882.) Review of the evidence and the instructions proffered by plaintiff persuade us that the jury was not misled due to the absence of those instructions.

Plaintiff requested that the long form of Illinois Pattern Jury Instructions, Civil, No. 15.01 (2d ed. 1971) (hereinafter IPI Civil 2d No. 15.01) be given. IPI Civil 2d No. 15.01 gives the following definition of proximate cause:

"When I use the expression 'proximate cause', I mean [that] [a] [any] cause which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]"

The long form of the instruction includes the bracketed language, which, according to the notes on use of the instruction, should be included only when there is evidence of a concurring or contributing cause to the injury or death, other than acts or omissions of the plaintiff. Plaintiff here argues that the "interaction of many persons who were not parties to this case in the trial" plus "reference to different medical conditions other than an aneurysm which could cause the symptomatology complained of" required use of the long form proximate cause instruction. According to plaintiff, the lower court's failure to give the requested instruction denied her the opportunity to argue that the jury could find defendants liable even if their negligence concurred with other causes. We can find no merit in plaintiff's argument.

■ ■ Plaintiff correctly points out that the theory of the defense was that osteoarthritis, and not an aneurysm, was the sole reason for her symptoms and hospitalization on December 27, 1974. She then attempts to bootstrap this fact into an additional possible cause of her injury. Her injury, however, was not being hospitalized but the damage caused by the hemorrhage in her head. We can discern no attempt anywhere in the record of this case to show that plaintiff's osteoarthritis caused the aneurysm to rupture. Nor can we find any such attempt with regard to plaintiff's possible migraine headaches, as plaintiff implies. Her osteoarthritis and possible migraine headaches were shown as alternative explanations of the pain and other symptoms plaintiff was experiencing when she was hospitalized. As such, they were the focus of defendants' diagnosis and treatment. While a party has a right to have a jury instruction on her theory of the case, it is reversible error for the court to give an instruction on an issue that is not supported by the evidence. (*In re Estate of Loesch* (1985), 134 Ill. App. 3d 766, 771-72, 481 N.E.2d 32.) Since the issue raised by plaintiff was not supported by the evidence, the trial court correctly refused to give the requested instruction.

Plaintiff also argues that other doctors and hospital personnel, who were not parties at the time of trial, failed to properly diagnose and treat her and thus were "other causes" of her injury. This argument is just as hollow as the one reviewed above. The record contains not a scintilla of evidence which purports to show that medical personnel other than defendants deviated from the applicable standard of care in relation to plaintiff. There is no basis for plaintiff's position that "other causes" warranted the long form proximate cause instruction.

Even if other causes of plaintiff's injury had been shown, however, the trial court still did not err in refusing to give the instruction plaintiff requested. The proximate cause instruction actually given by the trial judge states: "When I use the expression proximate cause I mean *any* cause which, in natural or probable sequence, produced the injury complained of." (Emphasis added.) This is the same instruction that was given in *Willson v. Pepich* (1983), 119 Ill. App. 3d 552, 456 N.E.2d 882. The court there said that this instruction does not suggest to the jury in any way that it is limited to finding a single cause for plaintiff's injury. We agree with the *Willson* court. If there had been evidence of other causes in the case before us, the instruction given would not have deterred plaintiff from arguing to the jurors that they could find defendants liable even though their negligence concurred with those other causes.

Plaintiff's second jury instruction argument is similar to the first. She asserts the court erred in refusing to give Illinois Pattern Jury Instructions, Civil, No. 12.04 (2d ed. 1971) (IPI Civil 2d No. 12.04), which states:

"More than one person may be to blame for causing an injury. If you decide that a [the] defendant[s] was [were] negligent and that his [their] negligence was a proximate cause of injury to the plaintiff, it is not a defense that some third person who is not a party to the suit may also have been to blame."

The notes indicate this instruction should be used only when negligence of a nonparty may have concurred or contributed to cause plaintiff's injury.

Plaintiff contends that evidence that other doctors and hospital staff also failed to diagnose the bleeding aneurysm could have led the jury to believe these nonparties were negligent and that defendants were not liable. The court's failure to give the instruction, according to plaintiff, allowed defense counsel to improperly argue that since the other doctors did not properly diagnose plaintiff's ailment, the defendant doctors could not be negligent.

Plaintiff's argument here is no more persuasive than her argument regarding the proximate cause instruction. Once again plaintiff lacks a sound basis for her position. Simply put, no evidence was offered to show that any other doctor or hospital staff member deviated from the applicable standard of care. No expert witnesses testified as to what was the standard of care for any doctors other than defendants or as to what other doctors did or failed to do that fell below the standard. The jury had before it no evidence that pointed blame at any nonparty third person. In the absence of evidence in support of an issue, the trial court properly refused to give an instruction on that issue. (*In re Estate of Loesch* (1985), 134 Ill. App. 3d 766, 771-72, 481 N.E.2d 32.) Moreover, the reference in the proximate cause instruction (IPI Civil 2d No. 15.01) to "any" cause, as shown above, adequately informed the jurors that they were not limited to determining a single cause for plaintiff's injury. *Willson v. Pepich* (1983), 119 Ill. App. 3d 552, 456 N.E.2d 882.

The trial court also refused to give Illinois Pattern Jury Instructions, Civil, No. 105.03 (2d ed. 1971) (IPI Civil 2d No. 105.03) as requested by plaintiff. The instruction essentially states the nature of a doctor's duty to advise a patient to consult a specialist or to refer a patient to a specialist. Plaintiff asserts that failure to give the requested instruction was error because her expert, Dr. Chessick, testified that Dr. Angell had negligently failed to refer plaintiff to an appropriate medical specialist.

Defendants correctly note that plaintiff once again failed to give any citation whatsoever to the record to support her allegation. Plaintiff responds by supplying page citations in her reply brief. While this is not a satisfactory procedure, we have nevertheless reviewed the testimony to which plaintiff has referred us. First of all, plaintiff has misstated the evidence in her initial brief. She claims that Dr. Chessick "clearly testified" that Dr. Angell failed to refer and "specifically testified" that each day Dr. Angell failed to refer was another breach of the standard of care. Dr. Chessick's actual testimony contains no reference whatsoever to the fact that Dr. Angell did not call in a specialist before January 2, 1975, and expresses no opinion whatsoever as to deviation from the standard of care.

Plaintiff argues, however, that since Dr. Chessick testified a spinal tap should have been done and Dr. Angell testified that he was not qualified to do a spinal tap, there was sufficient evidence of a duty to refer to justify the instruction. While there may be merit to plaintiff's argument, in our opinion the failure to give the instruction, when viewed in the context of all the evidence, was not so prejudicial as to

warrant reversal. Dr. Angell was aware of plaintiff's prior history of osteoarthritis and neck and head problems. He examined plaintiff after she arrived at the hospital and found her symptoms compatible with osteoarthritis. There was evidence that Dr. Angell did not deviate from the standard of care applicable to an orthopedic surgeon treating a patient with plaintiff's symptoms. From December 28 to January 2 plaintiff's condition improved or essentially stayed the same. Certain of Dr. Angell's treatment appeared to give her relief. On January 2, when she worsened significantly, Dr. Angell immediately called in Dr. Nelson. In light of the evidence we do not think the decision would have been different if the jury had been given the instruction on a doctor's duty to refer.

The last instruction refused by the trial court was a non-IPI instruction proffered by plaintiff which stated: "It is not a defense to this action that plaintiff suffered from an aneurysm." Plaintiff asserts that she wanted this instruction in order to avoid the implication to the jury that because the defendants did not cause the aneurysm they could not be held liable for their conduct in treatment of plaintiff.

We do not think the required instruction was necessary. First of all, the jury had already been instructed in IPI Civil 2d No. 15.01 that it was not confined to determining a single proximate cause. Therefore, even if the jury did take into consideration the prior existence of plaintiff's aneurysm, it was not precluded from considering the doctors' liability. It is perhaps more significant, however, that the proffered instruction was not relevant to any evidence presented at trial. The defendants neither pleaded nor attempted to prove that the existence of the aneurysm relieved them of any responsibility toward plaintiff. The instruction was not relevant to the case going to the jury and, indeed, could have been a source of confusion. It is within the trial court's discretion to determine which issues have been raised by the evidence. (*Ralston v. Plogger* (1985), 132 Ill. App. 3d 90, 98, 476 N.E.2d 1378.) The trial court properly exercised its discretion.

In summary, the trial court's refusal to give the instructions we have discussed above did not mislead the jury. Thus, there has been no reversible error. *Willson v. Pepich* (1983), 119 Ill. App. 3d 552, 558, 456 N.E.2d 882.

Finally, plaintiff asserts a panoply of allegedly erroneous evidentiary rulings. We note that several of these allegations involve material stricken from plaintiff's brief. Stricken matters will not be considered. Plaintiff also raises for the second time matters disposed of in our discussion of prejudicial argument and misconduct by defense counsel. These arguments will not be discussed again.

Plaintiff objects to testimony by Dr. Angell that one of his associates, Dr. Lithgow, told him he thought plaintiff was having a neck problem. According to Dr. Angell, the statement was made in the course of his and his associate's usual custom and practice. Plaintiff contends that there is nothing in the medical records, nor any other testimony, to show that Dr. Lithgow ever actually saw her while she was in the hospital and, therefore, his comments should not have been admitted. Plaintiff also objects that Dr. Lithgow's comment was inadmissible hearsay evidence. We find no error in admission of Dr. Angell's testimony.

■■ Evidence of the routine practice of an organization is relevant to prove that the actions of the organization on a specific occasion conformed to the routine, and where evidence is presented to show that the routine was not followed on a particular occasion, it is up to the jury to resolve the conflict and determine the credibility of the witnesses. (*Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, 23, 484 N.E.2d 365.) The mere existence of conflicting evidence did not affect the admissibility of Dr. Angell's testimony. Resolution of the conflict was properly left in the hands of the jury.

■■ In regard to plaintiff's hearsay objection, the transcript shows that Dr. Angell related Dr. Lithgow's remarks about plaintiff in the context of explaining the information he relied on in making decisions about the continuing treatment of plaintiff. Dr. Lithgow's statement was not offered as proof plaintiff was suffering from osteoarthritis. The court instructed the jury as to the limited purpose of the testimony. There was no error in its admission.

■■ Plaintiff next asserts that the lower court erred when it refused to allow her to use a certain medical text to impeach defendants and their experts on cross-examination. According to the record, however, one reason the trial court barred plaintiff from using the text was because she had not properly disclosed it to defendants during pretrial discovery. On this point we are persuaded by the record that the lower court did not err.

This case was initially filed in 1977. Yet, plaintiff failed to identify the challenged text in response to interrogatories directed to precisely this point one month before trial began. The trial court noted at one point that motions for discovery had been explicit but had not been complied with and, on another occasion, indicated that the interrogatories on this issue had been ignored. It is not disputed by plaintiff that the first time the text was so much as mentioned for the benefit of defendants' counsel was after trial had begun, when one of plaintiff's experts testified the text would be an authoritative medical ref-

erence in this case. Even after that testimony plaintiff's counsel did not reveal that he intended to use the text during trial. Thus, the trial court had good reason to bar plaintiff's use of the text on grounds of failure to disclose. Moreover, plaintiff was permitted to use other, similar texts. We agree with the trial court's comments that, under these circumstances, plaintiff suffered little, if any, prejudice from being denied the use of one additional text.

■■ Plaintiff argues that the barred text was somehow her trial counsel's work product with regard to materials intended to be used for impeachment and did not have to be disclosed. We know of no basis for this position, and plaintiff cites none. Plaintiff also asserts that at some point in the proceedings (we are given no citation to the record) the trial court ruled that it did not feel there would be any surprise in use of the text. In light of plaintiff's repeated attempts at trial to use the disputed text, the trial court was probably correct. Nevertheless, use of the text by plaintiff had not been disclosed as required. Whether discovery interrogatories have been properly answered is within the discretion of the trial court, and, absent an abuse of that discretion, the trial court's decision will not be overturned. (*Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, 23-24, 484 N.E.2d 365.) We find no abuse of discretion here.

■■ ■ Another allegation of error made by plaintiff concerns the trial court's refusal to permit cross-examination of Dr. Wetzel, a defense expert for Dr. Nelson, regarding a malpractice suit that had been brought against him in the past. Plaintiff claims the issues in that suit were the same as the issues in the present case and the cross-examination should have been allowed in order to show Dr. Wetzel's motivation and bias in favor of Dr. Nelson. There is no merit in this argument.

First, plaintiff cites no authority whatsoever for her position that she should have been allowed to cross-examine Dr. Wetzel on the issue of a prior lawsuit. Second, plaintiff makes assertions that the case against Dr. Wetzel is "on all fours" with the instant case from a medical diagnostic viewpoint and even compares various aspects of the two cases. However, she provides no citations to the record for purposes of review. Finally, according to the record, while the trial court precluded cross-examination of Dr. Wetzel on this issue, it also precluded cross-examination of plaintiff's expert, Dr. Chessick, on essentially the exact same issue. The lower court reasoned that the relevancy of any evidence of prior suits against the parties' experts would be outweighed by its prejudicial effect. The scope of cross-examination of a medical expert lies within the sound discretion of the trial court.

(*Sears v. Rutishauser* (1984), 102 Ill. 2d 402, 407-08, 466 N.E.2d 210.) The trial court is entitled to broad discretion when it considers the question of impeachment on collateral matters. (102 Ill. 2d 402, 409, 466 N.E.2d 210.) The trial court here applied its discretion similarly to both parties regarding cross-examination on cases having no connection with the case at bar. We find no abuse in this approach.

■■ The final claim of error we review is plaintiff's contention that the testimony of Dr. Wachowski, the radiologist who reviewed the X rays taken of plaintiff when she was hospitalized in December 1974, was cumulative and should not have been allowed. Dr. Wachowski used models of the spine to help explain how the arthritic condition in plaintiff's neck could have caused her headache. Plaintiff calls this testimony unfair and claims it gave excessive emphasis to the defense. We disagree.

While the use of models or skeletons to assist in the explanation of X-ray findings is within the discretion of the trial court, such demonstrative evidence must help explain some relevant issue in the case. (*Smith v. Ohio Oil Co.* (1956), 10 Ill. App. 2d 67, 76, 134 N.E.2d 526.) In the case at bar Dr. Wachowski was the only radiologist called by the defense. Since he was able to graphically depict the changes in plaintiff's spine, we think his testimony was not only relevant but also helpful to the jury in understanding the theory of the defense and thus was admissible.

Several other errors alleged by plaintiff are relevant only to the issue of damages. Since we are affirming the verdict in favor of defendants on the issue of liability we need not discuss damage issues.

In accord with the views expressed above, the judgment entered by the circuit court of Kane County on the jury verdict in this case is affirmed.

Affirmed.

LINDBERG, P.J., and WOODWARD, J., concur.