WILLIAM DUMAS, Plaintiff-Appellant, *v.* WILLIAM G. LLOYD, Defendant —(CLARENCE SHAEFER, Individually and d/b/a SHAEFER SERVICE STATION *et al.*, Defendants-Appellees.)

(No. 55227;

First District—June 9, 1972.

*Rehearing denied July 25, 1972.*

Horwitz, Anesi, Ozman & Associates, of Chicago, (Nat P. Ozmon, Joseph F. Cerveny, and Dom J. Rizzi, of counsel,) for appellant.

Vogel & Vogel, of Chicago, (Robert C. Vogel and Robert Guritz, of counsel,) for appellees.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

This action was brought by plaintiff, William Dumas, to recover damages for personal injuries allegedly caused by the negligence of defendants, William G. Lloyd, Clarence Shaefer, Norman Oil Company, Inc., and William H. Frazier. Prior to trial, a summary judgment in favor of Lloyd was entered and no appeal has been taken from that judgment. At the close of plaintiff's case at trial, verdicts were directed in favor of Norman Oil and Shaefer, and it is from the judgments entered thereon that plaintiff has appealed. It appears that the case as to defendant Frazier was abandoned in the trial court.

Defendant Norman Oil Company owns and supplies gasoline stations in the Chicago area, one of which is located at 143 S. California Avenue, Chicago. In September, 1962, defendant Shaefer was hired by Dale Norman, an officer of Norman Oil Company, to operate that service station on behalf of Norman Oil. He was not given a written contract by the company, nor did he hold a license to operate the station or give Norman Oil money or security for the operation. Shaefer did not own anything at the station and was not permitted to sell any products other than those supplied by Norman Oil. He received a commission of four cents for each gallon of gasoline sold at the station, and each day he banked the receipts after deducting his commission, and sent copies of the deposit slips to Norman Oil.

Shaefer was empowered to hire other people to help him with work at the station but, in practice, did not hire anyone without telling Dale

Norman. Defendant Frazier was one of those hired, and his employment continued at the times pertinent to this case. Each person hired by Shaefer was paid out of his own commissions.

The operating license for the service station was in the name of John Norman, president of Norman Oil Company. Each month Norman Oil paid the rent on the property, the electric bills, and sales tax on all products sold at the station. All of the equipment, such as the gas pumps, air compressor, underground tanks, and signs, including one which said "Norman Oil Products," were owned by Norman Oil, and all products sold there were furnished and delivered to the station by the company, usually through Dale Norman. Either he or John Norman would visit the station once or twice a week and would instruct Shaefer as to keeping the station clean.

The company supplied all sales books and had its name on all books and records used at the station. Shaefer had no control over the price set for gasoline, that being determined by Norman Oil. Nor could Shaefer draw on the bank account which was in the name of the company.

On various occasions Shaefer, in the presence of Dale Norman, accepted and held various items as security for products sold when the customer could not pay the full amount. On December 18 or 19, 1963, Shaefer took a revolver from a customer as security for a payment of $3.00 for gasoline. The gun had a belt wrapped around it which Shaefer did not remove, but he placed the gun with the belt in a desk drawer at the station. The desk had only one drawer and it was unlocked. He never unwrapped the belt and never looked to see if the gun was loaded.

The station was located in a rough neighborhood and almost every day at 3:30 or 4:00 P.M., a small group of friends, including plaintiff, would meet at the station and sit in the room where the desk was located, to laugh and joke and have a good time. They usually stayed there until Frazier was off work at 9:00 or 9:30 P.M.

On December 19, 1963, Preston Evans, a friend of both plaintiff and Frazier, saw Frazier in the gas station with the gun which had been taken from the desk drawer. He was playing with the revolver by spinning it on his finger. Evans said to Frazier, "You are going to shoot someone if you don't quit playing," and Frazier replied, "There is no bullets in it." When he got through playing with the gun, Frazier put it back in the scabbard in the drawer.

The next day, plaintiff came to the gas station about 3:30 P.M. to visit Frazier and to have a grease job and oil change on his car, but it turned out to be too cold to do the grease job. He and Frazier had been pretty good friends for about five years and Frazier had been driving

plaintiff's car all summer. About 5:30, while both men were in the station, along with several others, a man entered and asked Frazier to help him charge the battery in his car. Frazier said he couldn't do it right away and when the man asked how long he would have to wait, Frazier refused to do it and talked to the man in rough language. Plaintiff said he would help, and left the station and got the car started.

When plaintiff returned, Frazier asked him how much the man had paid for plaintiff's help. Plaintiff replied that the man was his friend and he had charged him nothing.

Plaintiff, in a joking manner, "told Frazier if he talked to me like he did to that old man, I would cut his throat off, and I did like this with my keys [indicating], and I walked out the door." As he went out, Frazier, also laughing, turned to a friend and said, "Watch me scare Red" [plaintiff]. He opened the drawer, took out the gun, and said, "Red, I'm going to shoot you," and shot him. Whereupon, Frazier immediately said, "Damn, look what I done did," and ran to help plaintiff, saying, "Man, I am sorry." They brought plaintiff back into the station, where Frazier called the police and told them he had accidentally shot a man.

Plaintiff suffered severe and permanent injuries and brought an action to recover damages based on defendants' alleged negligence.

Plaintiff declares that he having proved a *prima facie* case of agency between Norman Oil and Shaefer, the trial court erred in directing a verdict in favor of either Norman Oil or Shaefer because the latter's negligence is a question of fact for the jury.

Norman Oil makes three points: (1) that Shaefer was not its agent but an independent contract; (2) that plaintiff's own misconduct bars recovery; and (3) that even if Shaefer were an agent and Frazier a subagent, Frazier's actions were outside the scope of his employment and do not subject Shaefer or Norman Oil to liability under the doctrine of *respondeat superior.*

■■ Of primary consideration in the determination of whether a person is acting as an independent contractor or as an agent or employee is the degree and character of control exercised over the work being done. (See *Decatur Railway & Light Co. v. Industrial Board*, 276 Ill. 472, 114 N.E. 915.) When one undertakes to produce a given result without being in any way controlled as to the method used, he is considered an independent contractor and not an employee. (*Hartley v. Red Ball Transit Co.*, 344 Ill. 534, 539, 176 N.E. 751.) But the relationship of principal and agent exists if the principal has the right or the duty to supervise and control, and also the right to terminate the relationship at any time. (*Hulke v. International Manufacturing Co.*, 14 Ill.App.2d 5, 33, 142 N.E.2d 717.) The test is in the right to control and is not depend-

ent upon its exercise. (*Darner v. Colby*, 375 Ill. 558, 561, 31 N.E.2d 950.) The general rule of liability is that a principal is liable for the negligent acts of his agent, but not for those of an independent contractor. *Hulke v. International Manufacturing Co., supra.*

■■ We believe that the evidence as introduced by plaintiff did establish *prima facie* that Shaefer was acting as Norman's agent in the operation of the service station and was not an independent contractor. Although the day-to-day operating procedures were managed by Shaefer, his authority was limited by the interest of the owner whose representative frequently visited the premises and laid down for Shaefer certain rules as to buying and distribution methods. Norman owned all of the equipment used by Shaefer and set the prices for all the products sold. Signs, records and accounts were in the name of Norman Oil and Shaefer was powerless to change them. Furthermore, on January 5, 1965, without prior notice to Shaefer, the owners closed the station and terminated their relationship with Shaefer effective at that time. We realize, of course, that at this point in the trial Norman Oil had had no opportunity or need to introduce any countervailing evidence on this point in view of the court's directed verdict in its favor.

■■ However, even though a principal-agent relationship between Shaefer and Norman Oil could have been found to exist, a principal cannot be made liable through the doctrine of *respondeat superior* when the actions of his agent in no way constitute negligence. Plaintiff contends that Frazier could not have discharged the gun were it not for the careless and negligent manner in which Shaefer permitted the loaded gun to remain at ready access in the desk drawer. Yet, the uncontroverted testimony of both Shaefer and Frazier discloses that Shaefer did not know if the gun was loaded, and Frazier definitely thought it was not. We believe Shaefer acted reasonably when he allowed the belt to remain wrapped around the pistol and its case and placed it in a drawer which, although unlocked, was out of sight from those persons who might enter the station. Under all the circumstances of this case, for a gas station attendant to keep a gun, whether loaded or not, in a desk of his service station is, in our opinion, ordinary care as a matter of law. We also believe that the negligent or reckless act of Frazier was clearly not of a character which could be attributed to his employer. For both these reasons, therefore, we conclude that the trial judge acted properly in directing verdicts in favor of defendants Norman Oil and Shaefer. The judgments entered thereon are affirmed.

Judgments affirmed.

LORENZ, P. J., and DRUCKER, J., concur.