RICKEY CLARK, Plaintiff-Appellee, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellants.—(THE CITY OF CHICAGO *et al.*, Cross-Plaintiffs-Appellants, *v.* FMC CORPORATION, Cross-Defendant-Appellee.)

First District (2nd Division)   No. 79-537

Opinion filed September 16, 1980.

William R. Quinlan, Corporation Counsel, of Chicago (Robert R. Retke and Edmund Hatfield, Assistant Corporation Counsel, of counsel), for appellants.

James Thomas Demos, Ltd., of Chicago (William J. Harte, of counsel), for appellee Rickey Clark.

Wildman, Harrold, Allen & Dixon, of Chicago (Lenard C. Swanson, Ruth E. Van Demark and Bruce I. Grogman, of counsel), for appellee FMC Corporation.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Rickey Clark, sustained multiple permanent physical injuries when a demolition crane's boom slipped from its base and fell on him. He brought this action against the City of Chicago (the City), which had contracted for the demolition, and FMC Corporation (FMC), the crane's manufacturer. The City filed a cross-complaint against FMC for indemnification.[1] The trial court directed a verdict for Clark and against the City on the issue of liability for injury arising out of the City's authorization of an ultrahazardous activity. The court also directed a verdict for FMC against Clark. A jury then considered the issues of damages and indemnification. It assessed damages at $1,102,000. It also found the City was not entitled to reimbursement from FMC.

---

[1] Other parties named as defendants did not prosecute an appeal before this court.

On appeal the City seeks review of the following issues: (1) whether the trial court erred when it held the City liable to Clark as a matter of law; (2) whether the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1973, ch. 85, pars. 1—101 through 10—101) bars Clark's claim against the City; (3) whether the damages award is excessive; and (4) whether the jury's verdict in favor of FMC and against the City is against the manifest weight of the evidence.

On October 15, 1973, Clark, then 16 years old, was watching the demolition of a five-story building located at the intersection of 63d Street and Harper Avenue, Chicago. Clark watched the work while he stood on the west sidewalk of Harper. The demolition site across the street was owned by the City, which had procured a decree to demolish several buildings on the north side of 63d between Harper and Stony Island Avenues. The demolition was performed by Virgil Kitchens, an undisclosed subcontractor to Anthony Hall, who was awarded the demolition contract by the City. Kitchens' crane was manufactured by FMC in 1966, and consisted of several vertical crane sections of reinforced angle-iron measuring in total about 85 feet in height over the control cabin and engine housing. A movable boom, of similar construction and measuring about 85 feet in length, was attached to the base section of the crane. The boom was elevated by cables to a 55- or 60-degree angle relative to the crane sections. For demolition work Kitchens used an articulated, hinged bucket with teeth known as a "clam bucket" which he suspended by cable from the end of the boom. The bucket could bite off brick from the top of a building, and as the crane is rotated, transport it for deposit on the ground. On this day Kitchens was biting off brick and a portion of a fire escape. The crane was operated from the middle of Harper Avenue. After Kitchens deposited debris on a lot near the building, he raised the bucket up about 10 feet and started to swing the boom around quickly toward the building. The boom "started to go north on Harper" and fell toward the west sidewalk. It struck Clark, who was about 80 feet from Kitchens.

Clark suffered severe injuries. He was immediately taken to a hospital. During his initial hospitalization Clark underwent four operations. His spleen was removed and his liver repaired. A resulting bowel obstruction was removed. Two open fractures, one in his right leg, the other in his left arm, were repaired. A subsequent hospitalization was necessary for more surgery.

During trial several witnesses testified about Clark's injuries, his work record and abilities, and the design of the boom foot assembly. After argument of counsel and instruction in the law, the jury deliberated for more than two hours and returned its verdicts.

## I.

The City first contends the trial court erred when it held the City liable to Clark as a matter of law. The City argues the record fails to support Clark's theory that the demolition falls within the scope of the "ultrahazardous activity" doctrine. Furthermore, the City claims that since the demolition was conducted by an independent contractor, the City cannot be held liable for injury resulting from that demolition. Clark responds that the instant demolition was an "ultrahazardous activity" as a matter of law. Accordingly, the author of that activity is strictly liable for injury arising proximately therefrom. We agree.

■■ Traditionally, the dangers attendant to demolition work within a metropolitan community have prompted Illinois courts to characterize such activity as "inherently" or "intrinsically" dangerous. (See *Sherman House Hotel Co. v. Gallagher* (1906), 129 Ill. App. 557, 559-60; *Van Auken v. Barr* (1933), 270 Ill. App. 150, 154.) These synonymous terms, as traditionally used, refer to that "* * * type of danger which inheres in the instrumentality or condition itself at all times * * * and does *not* mean danger which arises from mere casual or collateral negligence of others with respect to it under particular circumstances. Concisely stated, the term means, dangerous in its normal or nondefective state as for example, explosives * * *." (Emphasis added.) (*Watts v. Bacon & Van Buskirk Glass Co.* (1958), 20 Ill. App. 2d 164, 168, 155 N.E.2d 333, *aff'd* (1959), 18 Ill. 2d 226; see also *Sherman House Hotel Co. v. Gallagher; Van Auken v. Barr.*) Because the focus of inquiry is directed to the nature of the activity or instrumentality, once that activity is determined to be intrinsically dangerous a court will impose liability upon the party authorizing the work without regard to negligence. (*City of Joliet v. Harwood* (1877), 86 Ill. 110, 111 (explosives used in blasting by independent contractor); *Van Auken v. Barr* (1933), 270 Ill. App. 150, 154 (demolition work by independent contractor); see also *FitzSimmons & Connell Co. v. Braun* (1902), 199 Ill. 390, 396-97, 65 N.E. 249.) Thus the traditional imposition of absolute liability upon an employer or property owner for injuries resultant from inherently dangerous activities authorized by them but performed by independent contractors is directly analogous to the modern operation of the "ultrahazardous activity" doctrine.[2] See

---

[2] Although our research discloses no Illinois case which expressly characterizes blasting operations or demolition work as "ultrahazardous," Illinois Pattern Jury Instructions, Civil, No. 115.01 (2d ed. 1971) does provide as follows:
  "115.01 Ultrahazardous Activities—Absolute Liability
  When a person carries on an ultrahazardous activity such as _____ (e.g., blasting), he is liable for any [injury] [property damage] proximately caused by that activity regardless of the amount of care used * * *."
The comment to this instruction cites blasting and demolition cases including *Sherman House Hotel Co.* and *Van Auken.*

generally Prosser, Torts §78, at 512-13 (4th ed. 1971); Burke, *Rylands v. Fletcher in Illinois*, 22 Chi.-Kent L. Rev. 103, 114 (1944); compare *Opal v. Material Service Corp.* (1956), 9 Ill. App. 2d 433, 451-61, 133 N.E.2d 733 (absolute liability for damages resulting from use of explosives) and *Fitz Simmons & Connell Co. v. Braun* with *Sherman House Hotel Co. v. Gallagher* and *Van Auken v. Barr*.

■■ The present record discloses a demolition of a five-story building within the city of Chicago. We are compelled to conclude that that work constituted an inherently dangerous activity, as a matter of law. (*Sherman House Hotel Co. v. Gallagher; Van Auken v. Barr*.) Under the facts of this case, whether a demolition is characterized in traditional or more modern terms, the result is the same—the City is absolutely liable, as a matter of law, for injuries caused by the demolition activity.[3] Since the fall of a demolition crane's boom is clearly within the scope of demolition activities, the trial court did not err when it held the City absolutely liable for Clark's injuries.

## II.

The City next claims that the Local Governmental and Governmental Employees Tort Immunity Act bars Clark's claim. (See generally Ill. Rev. Stat. 1973, ch. 85, pars. 2—109, 2—201, 2—202, 2—206, and 3—108 (the Act).) The instant case, however, presents an instance where the Act fails to provide immunity from suit.

■■ The undisturbed case law in Illinois provides that a municipal entity can be held liable for injury resultant from inherently dangerous or ultrahazardous activity whether performed by an employee or independent contractor. (*City of Joliet v. Harwood* (1877), 86 Ill. 110, 111-12; *Baker v. S. A. Healy Co.* (1939), 302 Ill. App. 634, 653, 657, 24 N.E.2d 228.) Although the Act is broad in its application, it does not provide blanket protection. (*First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 11, 373 N.E.2d 1326.) Furthermore, because the Act is in derogation of the common law, it must be strictly construed against the local public entity. (*Reynolds v. City of Tuscola* (1971), 48 Ill. 2d 339, 342, 270 N.E.2d 415; *Mounce v. City of Lincoln* (1978), 64 Ill. App. 3d 461, 463, 381 N.E.2d 421, *appeal denied* (1979), 72 Ill. 2d 582.) Therefore, where the Act fails to provide immunity, as in the instant case, none exists.

---

[3] The City also contends on appeal that the record shows Clark needlessly exposed himself to the dangerous activity and thereby assumed the risk of injury. The City argues that the trial court erred when it found liability as a matter of law because such a finding removed from the jury any consideration of its assumption of risk defense. The City, however, expressly waived this defense during trial. It did not raise the issue in its post-trial motion. Therefore the issue is not preserved for review. *Robar v. Isham* (1924), 310 Ill. 585, 590, 142 N.E.2d 460; *R. G. LeTourneau, Inc. v. Quinn Equipment Co.* (1970), 131 Ill. App. 2d 295, 297, 266 N.E.2d 151.

### III.

■■ The City also contends the jury award of $1,102,000 was excessive under the evidence. We have reviewed the record. Evidence adduced at trial indicates Clark sustained serious, permanent injury to his legs, hip, pelvis, and internal organs.[4] Uncontradicted testimony disclosed that he suffers constant pain, expected to increase in the future. The City proffered no evidence in support of a lesser award. In the absence of passion or prejudice by the jury, we decline to interfere with the jury's exercise of discretion where, as is true here, "* * * the assessment of damages is within the range of the evidence, the instructions proper, and there is no improper exclusion of evidence. [Citation.]" *Palmer v. Avco Distributing Corp.* (1979), 75 Ill. App. 3d 598, 608, 394 N.E.2d 480; see also *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 452-53, 158 N.E.2d 63, *cert. denied* (1959), 361 U.S. 127, 4 L. Ed. 2d 180, 80 S. Ct. 256; *Cummings v. Chicago Transit Authority* (1980), 86 Ill. App. 3d 914, 933, 408 N.E.2d 737, 742.

### IV.

■■ Lastly, the City claims the jury's finding for FMC and against the City was contrary to the manifest weight of the evidence. The City and FMC presented conflicting expert testimony. After a careful review of that testimony we cannot say that the jury's finding in FMC's favor was against the manifest weight of the evidence. See *Kincl v. Hycel, Inc.* (1977), 56 Ill. App. 3d 772, 779, 781, 372 N.E.2d 385, *appeal denied* (1978), 71 Ill. 2d 603.

In accordance with the aforesaid reasons we affirm the trial court's judgment of liability against the City and the jury's award upon that liability. Furthermore, we affirm the jury's finding in favor of FMC and against the City.

Affirmed.

PERLIN, P. J., and HARTMAN, J., concur.

---

[4] Clark is unable to perform work which requires manual labor or constant standing or walking. His right leg is now shortened by 1 1/4 inch. His medical expenses to date amount to $27,431.47. Future surgery is anticipated.