DEBRA K. JOHNSON, Plaintiff-Appellant, v. RONALD E. SUMNER *et al.*, Defendants (The Methodist Medical Center of Illinois, Defendant-Appellee).

Third District   No. 3—86—0713

Opinion filed September 3, 1987.

Jack Vieley, of Peoria (Dean R. Essig, of counsel), for appellant.

Wayne L. Hanold, of Westervelt, Johnson, Nicoll & Keller, of Peoria (James R. Morrison, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Plaintiff, Debra K. Johnson, brought this action for medical malpractice alleging that Drs. Ronald E. Sumner, William Hart, Lorris M. Bowers, and The Methodist Medical Center of Illinois were negligent when rendering her treatment in the emergency room and following her admission to the hospital. Johnson appeals the order entered by the circuit court of Peoria County granting the hospital's

motion for summary judgment based on grounds that the emergency room physician attending her was an employee of Hospital Emergency Physicians, S.C., an Illinois medical corporation, and was not an agent of the hospital. The sole issue presented for review is whether the record presented to the trial court was sufficient at law to warrant granting of the hospital's motion for summary judgment.

On the evening of June 25, 1978, Debra K. Johnson developed abdominal pains and on the advice of her family physician, Dr. Sumner, entered the emergency room of The Methodist Medical Center. Johnson was initially examined by Dr. Steven Driggers, a resident in training at the hospital and, as stated in an affidavit submitted to the trial court, an employee of Hospital Emergency Physicians, S.C. Johnson also was later examined by Dr. Sumner and a surgeon, Dr. Hart. The physicians' diagnosis was that she was suffering from appendicitis and an appendectomy was recommended. A pelvic examination was not made by Dr. Driggers when she entered the emergency room, but prior to surgery and following admission to the hospital a tube test for pregnancy revealed an initial positive finding. When the test results were reported, it was suggested that the test be repeated in three to five days to confirm the positive finding, but the test was not re-ordered.

Following her surgery and discharge from the hospital, Johnson continued to experience pain and discomfort. Approximately two months later she underwent another surgery at Peoria's St. Francis Hospital for removal of a ruptured ectopic pregnancy. During this surgery Johnson's fallopian tubes were removed, rendering her sterile.

Johnson's complaint alleged, among other things, that Methodist Medical Center by its "agents and servants" was negligent in the diagnosis of her condition and in the treatment she received in the emergency room and the hospital. Her complaint also stated that Dr. Driggers, the emergency room examining physician, was an agent of the hospital. In a hearing on the hospital's motion for summary judgment, the trial court was presented with the uncontradicted affidavit of the hospital's vice-president stating that Dr. Driggers was working as an employee of Hospital Emergency Physicians, S.C., when he examined Johnson. The affidavit also stated that the hospital had entered into a written agreement with Hospital Emergency Physicians, S.C., wherein Hospital Emergency Physicians would provide physicians for the purpose of rendering emergency room medical services. Further, that the agreement provided (1) that the hospital would guarantee the corporation a "cash flow" of $40,000 per month; (2) that the corporation would directly bill patients for emergency room

care; (3) that the corporation, through a director chosen from the physicians provided by the corporation, would exercise overall supervision of the care and services provided in the emergency room; and (4) that the corporation would provide training, instruction, and clinic directions to the staff of the hospital in regard to emergency care services.

Johnson on appeal asserts that the relationship between the hospital, the emergency room physicians, and Hospital Emergency Physicians, S.C., raises factual issues which preclude the trial court from granting summary judgment to the hospital. She maintains that the emergency room physicians may be held to be agents of the hospital, thereby allowing imputation of vicarious liability as a matter of law to the hospital for physicians' actions which may be found to be negligent. In argument presented on appeal, Johnson also requests this court reconsider its position of declining to extend the doctrine of apparent agency in a tort action for medical malpractice.

In our recent decision rendered in *Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 498 N.E.2d 867, this court declined to extend the doctrine of apparent agency in a tort action for medical malpractice. The facts and circumstances Johnson offers in support of the extension and application of the principle of apparent authority closely parallel those cited by the appellant in *Greene, e.g.*, admission forms with the hospital's logo. We, however, are not persuaded this doctrine recognizes the realities of the typical hospital-physician relationship wherein the physician directs treatment, orders tests, etc.; nor that the application of this doctrine promotes a basic public policy of tort law that the tortfeasor be financially responsible to the injured party for his misconduct. Hospital Emergency Physicians, S.C., by written agreement with the hospital, assumed the responsibility of directly supervising the care and services provided emergency room admittees by the emergency room physicians. The medical decision of whether or not to order a pelvic examination rested with the attending emergency room physician, who by agreement was being supervised by Hospital Emergency Physicians, S.C. The failure to order the examination, if found to be negligent, we hold should be imputed to the hospital only if the examining physician is found to be an express agent of the hospital, not through an extension and application of the doctrine of apparent agency. *Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 498 N.E.2d 867; *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198; *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 435 N.E.2d 877.

■ Johnson contends there exists a genuine issue of material fact as to whether Dr. Driggers was an express agent of the hospital,

thereby allowing imputation of vicarious liability to Methodist Medical Center. To establish the existence of a principal-agent relationship in the medical setting, control of a physician's actions must be found to reside in the hospital and payment to the physician for services rendered patients be made to the hospital. *Garfield Park Community Hospital v. Vitacco* (1975), 27 Ill. App. 3d 741, 327 N.E.2d 408.

The Methodist Medical Center presented to the trial court an uncontradicted affidavit that Dr. Driggers, at the time of his examination of Johnson, was an employee of Hospital Emergency Physicians, S.C. The complete agreement between the hospital and Hospital Emergency Physicians, S.C., was also presented to the trial court. As noted above, this agreement stipulated, among other things, that Hospital Emergency Physicians, S.C., was responsible for employment, retention, and supervision of emergency care physicians such as Dr. Driggers. Though the agreement required emergency room physicians be members of the hospital staff, there was no showing this provision allowed the hospital to control the medical diagnosis and treatment decision making of the emergency room physicians. The policies and procedures outlined in the agreement with respect to providing emergency care services we find do not establish the existence of an agency relationship insofar as the hospital's having control over physician treatments and diagnoses.

■ With respect to payment of emergency room physicians, the hospital guaranteed Hospital Emergency Physicians, S.C., a "cash flow" of $40,000 per month. The corporation's patient billings which were in excess of this sum, if any, were remitted to the hospital. Though the issue of the source of the emergency room physicians' compensation has not been raised, we find that given Hospital Emergency Physicians, S.C., employed the physicians and directly billed emergency room patients for physicians' services, the guarantee of a monthly cash flow does not constitute a direct payment establishing an express agency relationship between the physicians and the hospital.

■ It is well settled that a party is entitled to a grant of summary judgment as a matter of law when the pleadings, depositions, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); *Ruby v. Wayman* (1968), 99 Ill. App. 2d 146, 240 N.E.2d 699.) While Johnson is not required to prove her case in response to the hospital's motion for summary judgment, she is required to present sufficient factual basis to entitle her to a judgment under applicable law. (*Wooding v. L & J Press Corp.* (1981), 99 Ill.

App. 3d 382, 425 N.E.2d 1055; *Conrad v. Christ Community Hospital* (1979), 77 Ill. App. 3d 337, 395 N.E.2d 1158.) Our review of the record reveals that Johnson has not met this burden. We therefore find no error in the lower court's ruling that no agency relationship, either express or apparent, could be found to exist between the physicians provided by Hospital Emergency Physicians, S.C., and The Methodist Medical Center, and therefore no genuine issue of material fact existed as to the liability of The Methodist Medical Center to Johnson.

Accordingly, the summary judgment entered by the circuit court of Peoria County is affirmed.

Affirmed.

BARRY, P.J., and STOUDER, J., concur.