TULLY HEUBNER, Plaintiff-Appellant, v. GALESBURG COTTAGE HOS-PITAL *et al.*, Defendants (Michael S. Sidell *et al.*, Defendants-Appellees).

Third District   No. 3—90—0423

Opinion filed June 4, 1991.

Law Offices of William W. Schooley, of Granite City (Floyd D. Peterson, Jr., of counsel), for appellant.

Jeanne L. Wysocki, of Quinn, Johnston, Henderson & Pretorius, of Peoria (Murvel Pretorius, Jr., of counsel), for appellees.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff Tully Heubner brings this interlocutory appeal from an order of the circuit court of Knox County granting a motion of defendant radiologists Michael S. Sidell and Subbia G. Jagannathan for summary judgment. This is our second opportunity to review this cause of action, the first arising on interlocutory appeal from the dismissal of the medical malpractice complaint against Galesburg Cottage Hospital and these defendants. In our earlier unpublished order, we held pursuant to *McCastle v. Mitchell B. Sheinkop, M.D., Ltd.* (1987), 121 Ill. 2d 188, 520 N.E.2d 293, that the complaint need not have been dismissed for failure to attach a report from a radiologist.

Defendant Cassandra P. Perkins has never been served and is not a party to this appeal. For purposes of this decision, our reference hereafter to "defendants" or "parties" is not meant to include Perkins.

On remand from the earlier appeal, defendants' renewed motion to dismiss was denied, and they answered the complaint. The parties proceeded with discovery, and defendants moved for summary judgment. On May 22, 1990, the trial court granted summary judgment in defendants' favor on grounds that Ms. Perkins was neither retained nor under the control of these defendants, and that any malpractice on her part, as a matter of law, did not impose vicarious liability on the other named defendants. This appeal was perfected pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) from the order granting summary judgment in favor of defendant radiologists. Plaintiff has not appealed from the order granting summary judgment in favor of Galesburg Cottage Hospital. We affirm.

Underlying this cause of action in medical malpractice are two injuries to plaintiff's left wrist. Plaintiff reported to defendant hospital on May 4, 1985, for treatment and X rays following the initial injury. He was reinjured on September 7, 1985, and again received treatment and X rays at defendant hospital on September 8. On that date Dr.

Cassandra Perkins was the only radiologist on duty. Dr. Perkins interpreted the wrist X rays as normal and signed her name to the "Diagnostic Radiology Consultation" form under the preprinted names of Drs. Michael S. Sidell and Subbia G. Jagannathan. According to the complaint, the September 8 X rays disclosed a subluxation or dislocation of the lunate bone of the left wrist, but the condition was not diagnosed at that time by the defendant radiologists. Plaintiff did not learn of the condition until he consulted with an orthopedic surgeon about persistent pain in the wrist on July 16, 1986. Plaintiff brought suit against the hospital; Dr. Perkins; and Drs. Sidell and Jagannathan, licensed diagnostic radiologists and shareholders of a small professional corporation known as Galesburg Radiology Associates (GRA) which provided radiology services for the hospital.

According to the pleadings, affidavits and discovery materials of record, GRA needed another radiologist for a short term in 1985. (The record on appeal does not conclusively establish the existence of the small professional corporation at the time of the malpractice complained of. Therefore, for purposes of this opinion, the liability of GRA is deemed the same as that of the individual defendant doctors.) They contacted International Placement & Recruiting (IPR) to obtain a *locum tenens* physician to work at Galesburg Cottage Hospital for the period September 7 through September 13, 1985. IPR provided Dr. Perkins, a licensed radiologist, for this purpose. The contract signed by Dr. Sidell for GRA stated that GRA would pay IPR for the radiologist's services and IPR would provide physician's benefits, malpractice insurance, etc. GRA furnished Perkins with the schedule of her required services for the hospital. In the event the physician was not acceptable to GRA, it was Sidell's understanding that he was to report his complaint to IPR, not the physician, and IPR would replace her. IPR is not a party to this suit.

■ The issue in this appeal is whether a genuine issue of material fact precludes the entry of summary judgment. While plaintiff is not required to prove his case in response to defendants' motion for summary judgment, he is required to present sufficient factual basis to entitle him to a judgment under applicable law. (*Johnson v. Sumner* (1987), 160 Ill. App. 3d 173, 513 N.E.2d 149.) "A triable issue precluding summary judgment exists where there is a dispute as to material facts, or where, the material facts being undisputed, reasonable persons might draw different inferences from the facts." *Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 1014, 498 N.E.2d 867, 870, citing *Ruby v. Wayman* (1968), 99 Ill. App. 2d 146, 240 N.E.2d 699.

The trial court in this case found as a matter of law that the defendant doctors "did not retain or exercise any control over [Dr.] Perkins' *** professional discretion and conduct"; they did not "engage in conduct sufficient to hold them vicariously liable for the conduct of [Dr.] Perkins"; and that neither defendant doctor "failed to diagnose a dislocation of Plaintiff's left wrist and failed to select qualified persons to perform radiological duties at Galesburg Cottage Hospital." The issue plaintiff seeks to try is whether Drs. Sidell and Jagannathan exercised control over Dr. Perkins which would subject them to malpractice liability.

In support of plaintiff's argument that the doctors of GRA may be liable for what plaintiff concedes to have been Dr. Perkins' primary negligence, plaintiff cites *Greene v. Rogers* and *Johnson v. Sumner*. We have reviewed both cases and find them factually inapposite.

In *Greene*, plaintiff brought a medical malpractice suit against a consulting doctor and hospital for the alleged wrongful death of his wife. According to the complaint, the emergency room physician, Dr. D'Arcy, negligently admitted Mrs. Greene to a regular hospital ward instead of the coronary care ward and failed to diagnose her heart condition and put her through a series of physical tests while she was suffering from myocardial infarction. In one count plaintiff sued the hospital based on a *respondeat superior* theory, asserting that D'Arcy was an agent of the hospital. The trial court granted summary judgment for the hospital on this count, and the jury returned verdicts for both defendants on the remaining counts. Plaintiff raised several issues on appeal, including a challenge to the trial court's grant of summary judgment for the hospital which is relevant to this case. We noted in *Greene* that the two dominant factors in determining whether an agency relationship existed between the emergency room physician and the hospital were "control retained by the principle and the method of payment." (147 Ill. App. 3d at 1014, 498 N.E.2d at 871.) The facts of *Greene* demonstrated that the hospital there did not control the initial treatment and diagnosis of patients in the emergency room and that, inasmuch as Dr. D'Arcy was employed and paid by an entity known as "Scott Emergency Medical Services, Ltd.," which was under contract to furnish emergency physician services to the hospital, D'Arcy could not be considered an agent of the hospital by the manner of payment either.

Plaintiff seeks to analogize the employer-employee relationship that we noted between D'Arcy and Scott Emergency Medical Services, Ltd., in *Greene* with the relationship between Perkins and GRA here. Significantly, however, the record conclusively belies plain-

tiff's position since it is clear that Perkins' employee status was with IPR, not GRA. GRA had contracted to provide radiological services to the hospital here, and IPR contracted to provide GRA with a *locum tenens* physician for a week. IPR, not GRA, retained the right to control and to pay Perkins for her services.

Similarly, *Johnson* fails to support plaintiff's argument. In *Johnson*, plaintiff sued emergency room doctors and a hospital for malpractice as a result of failure to diagnose an ectopic pregnancy which later ruptured and left her sterile. The emergency room doctors there were employed by Hospital Emergency Physicians, S.C. The small professional corporation was under a contract with the hospital to provide emergency room services, and was paid by the hospital for its physicians' services. The corporation, not the hospital, "was responsible for employment, retention, and supervision of emergency care physicians." (160 Ill. App. 3d at 176, 513 N.E.2d at 151.) In ruling that the trial court did not err in granting summary judgment for the hospital, we held that, as in *Greene*, no express agency existed between the hospital and the emergency room physician, and that the doctrine of apparent agency would not be extended to claims of medical malpractice to impose vicarious liability on the hospitals in this State. 160 Ill. App. 3d at 176, 513 N.E.2d at 151, citing *Greene*, 147 Ill. App. 3d 1009, 498 N.E.2d 867; *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198; *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 435 N.E.2d 877.

There was no issue in *Johnson* as to the vicarious liability of Hospital Emergency Physicians, S.C., or the individual physician/shareholders of the small corporation. The only issue there addressed was whether the hospital could be held vicariously liable based on an agency relationship between the hospital and the individual physicians employed by the small corporation providing emergency room services. In this case, plaintiff raises no issue on appeal concerning the hospital's vicarious liability. Thus, although certain factual similarities may be identified, *Johnson*, like *Greene*, is too attenuated to lend any support to plaintiff's cause in this case.

■ We have considered other factors plaintiff suggests as determinative on the employer-employee issue and found them wanting. Plaintiff notes, for instance, that in his deposition Dr. Jagannathan alluded to "hiring" Dr. Perkins and stated that she was allowed to use GRA's letterhead and report forms during her association with GRA. Technically, the defendant doctors "subcontracted" with IPR for a service, *i.e.*, for a fee, IPR was to furnish GRA with a radiologist for a few days so that GRA could meet its contractual obligation with the

hospital. The fact that Dr. Perkins was permitted to use GRA's stationery and report forms does not detract from the inescapable conclusion that she performed services as an agent of an independent contractor (IPR), and not as an employee of Drs. Siddell and Jagannathan. Plaintiff does not dispute the fact that Dr. Perkins was the only radiologist on duty on September 8, 1985, when plaintiff's X ray was interpreted. It is clear that her use of GRA's stationery was a mere convenience and did not prove a master/servant relationship between Dr. Perkins and Drs. Siddell and Jagannathan. Thus, the trial court did not err in finding as a matter of law that no agency relationship existed between Perkins and the shareholders of GRA.

■ From the pleadings and other documentation before us, it is clear that Dr. Cassandra Perkins was an employee only of IPR. With respect to her, these defendant doctors stand in the same position as the hospitals in *Greene* and *Johnson*. Since they did not assume control over Perkins' employment, retention or supervision and she was paid by IPR for her services, there are no facts sufficient to raise a material dispute on the agency question, and the trial court did not err in granting summary judgment in favor of the doctors who contracted for IPR's service.

The judgment of the circuit court of Knox County is affirmed.

Affirmed.

STOUDER, P.J., and GORMAN, J., concur.