EDGARDO Q. DAHAN *et al.*, Plaintiffs-Appellees, v. UHS OF BETHESDA, INC., d/b/a Mount Sinai Hospital-North, *et al.* Defendants-Appellants.

First District (2nd Division)   Nos. 1—97—0462, 1—97—0632 cons.

Opinion filed March 24, 1998.

RAKOWSKI, J., specially concurring.

Frederick J. Artwick and Paul E. Veith, both of Sidley & Austin, and French, Kezelis & Komimiarek, P.C. (Randall J. Gudmundson and Julie A. Neidhardt, of counsel), both of Chicago, for appellants.

Powers, Rogers & Smith, P.C., of Chicago (Joseph A. Power, Jr., Larry R. Rogers, and Devon C. Bruce, of counsel), for appellees.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiffs Edgardo Q. Dahan and Ruby Dahan brought this action for medical malpractice alleging that Dr. Charles Schikman was negligent when rendering treatment to Edgardo. The Dahans also sued Mount Sinai Hospital-North (Mount Sinai), the hospital in which Dr. Schikman operated a diabetes clinic, UHS of Bethesda, Inc. (UHS), and Mount Sinai Medical Center. After a trial, the jury returned a verdict for the Dahans and against the defendants in the amount of $11,962,390. The trial court granted a directed verdict in favor of Mount Sinai Medical Center and, thereafter, reduced the itemized damages awarded to Ruby Dahan for loss of Edgardo's services from $500,000 to $200,000, thereby reducing the judgment to $11,662,390.

On appeal, defendants UHS and Mount Sinai contend that: (1) Dr. Schikman was not an agent of the hospital and the jury instructions on agency were insufficient; (2) the jury instructions on proximate cause were erroneous and prejudicial; (3) the trial court erroneously permitted improper testimony by an expert witness; and (4) the damages award was excessive. Defendant Dr. Schikman argues that: (1) the jury instructions on proximate cause were erroneous; (2) the trial court improperly allowed expert testimony that was cumulative to other expert testimony; and (3) the damages award was excessive. Plaintiffs cross-appeal and argue that the trial court abused its discretion in exercising remittitur and reducing the jury's award.

BACKGROUND

Mount Sinai was operated as a joint venture of UHS and Mount Sinai Medical Center. Mount Sinai granted staff privileges to more than a dozen physicians, but only three, including Dr. Charles Schikman, had the use of offices at the hospital. Dr. Schikman served as the director of the hospitals diabetes clinic, which was located on the fifth floor of the hospital.

Plaintiff Edgardo Dahan was an employee of Mount Sinai, serving as the head of the supply department. In May 1988, Edgardo saw Dr. Paul Parmet, an opthamologist on staff at Mount Sinai, because of vision problems possibly associated with migraine headaches he had been having. Dr. Parmet referred Edgardo to Dr. Schikman.

On May 18, 1988, Dr. Schikman saw Edgardo in his office at Mount Sinai. After taking his medical history and examining him, Dr. Schikman prescribed medication for Edgardo's migraines and ordered an EEG and cervical spine X ray. A follow-up visit was scheduled for one week later. On May 25, 1988, Edgardo returned and told Dr. Schikman that his migraines were better but that his blurred vision had become worse. Dr. Schikman ordered a carotid ultrasound examination to monitor blood flow through the carotid arteries to the brain. He then instructed Edgardo to return for a follow-up visit in two weeks.

On June 2, 1988, Edgardo had a stroke. Thereafter he was diagnosed with polycythemia rubra vera, which is an increased amount of red blood cells. In their complaint, plaintiffs alleged that Dr. Schikman failed to diagnose polycythemia rubra vera and was negligent in failing to perform a CBC, which is a blood test that is used to diagnose polycythemia rubra vera. Plaintiffs argued that, had a CBC been obtained, the condition of polycythemia rubra vera would have been diagnosed, treatment would have been instituted and Edgardo would not have suffered a stroke.

Since the stroke, Edgardo's father has moved into Edgardo's home to take care of him. As a result of the stroke, Edgardo has, *inter alia*, difficulty speaking, lacks full use of one of his arms and communicates by gesturing, writing and by using a communication device. He uses a cane and a motorized scooter-type vehicle.

The jury returned a verdict in favor of the plaintiffs and answered special interrogatories finding that Dr. Schikman was both an actual and apparent agent of the hospital and not an independent contractor. The jury awarded plaintiffs $5,500,000 for disability and disfigurement, $2 million for past and future pain and suffering, $2,062,390 for future medical and caretaking expenses and $900,000 for lost earnings. The jury also awarded Ruby Dahan $500,000 for loss of Edgardo's services and $1 million for loss of his society, companionship and sexual relationship. Thereafter, the trial court reduced the jury's award for loss of services by $300,000. Mount Sinai, UHS and Dr. Schikman appeal from the jury verdict and the trial court's denial of their posttrial motions.

We affirm in part, reverse in part and vacate in part.

ANALYSIS

I

UHS and Mount Sinai first contend that the trial court erred in denying their request for judgment notwithstanding the verdict because Dr. Schikman was not an actual or apparent agent of Mount Sinai. They argue that the contract between Dr. Schikman and Mount Sinai and the common-law test for agency established that Dr. Schikman worked for the hospital as an independent contractor and not an actual agent. UHS and Mount Sinai further argue that Dr. Schikman was not an apparent agent of Mount Sinai. Plaintiffs contend that the facts do not overwhelmingly favor the defendants' assertions and that the jury's general verdict and specific findings should be allowed to stand. We agree with plaintiffs' contention.

■■ The standard of review for denial of a motion for judgment notwithstanding the verdict is well established. A judgment notwithstanding the verdict can only be granted where all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967); *Schumacher v. Continental Air Transport Co.*, 204 Ill. App. 3d 432, 444, 562 N.E.2d 300 (1990). A hospital may be vicariously liable based upon a principal-agent relationship between the hospital and the physician. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518, 622 N.E.2d 788 (1993). Generally, one who engages the services of an independent contractor is not liable for the acts or omissions of that contractor. *Letsos v. Century 21-New West Realty*, 285 Ill. App. 3d 1056, 1065, 675 N.E.2d 217 (1996). Whether the parties' relationship is that of principal and agent, or owner and independent contractor, is a question of fact unless the relationship is so clear that it is indisputable. *Letsos*, 285 Ill. App. 3d at 1065. However, specific conduct can inferentially demonstrate the existence of a principal-agency relationship, despite evidence that the parties intended an independent contractor relationship. *Letsos*, 285 Ill. App. 3d at 1065.

■ Prior to the Illinois Supreme Courts decision in *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511 (1993), Illinois courts held that a hospital could only be vicariously liable through an agency relationship if the physician was an actual agent of the hospital. See *Johnson v. Sumner*, 160 Ill. App. 3d 173, 175, 513 N.E.2d 149 (1987); *Greene v. Rogers*, 147 Ill. App. 3d 1009, 1015-16, 498 N.E.2d 867 (1986). In *Johnson v. Sumner*, 160 Ill. App. 3d 173, 513 N.E.2d 149, and *Greene v. Rogers*, 147 Ill. App. 3d 1009, 498 N.E.2d 867, cases

cited by UHS and Mount Sinai, Illinois appellate courts held that control retained by the principal and method of payment are the two dominant factors in determining whether a physician is an agent or independent contractor. However, in *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511 (1993), the supreme court criticized the decisions in *Greene* and *Johnson*. The *Gilbert* court did not overrule *Greene* and *Johnson*, but it did note that these cases overlooked the "realities of modern hospital care." 156 Ill. 2d at 520. The overlooked realities include the current business and marketing practices of modern hospitals. *Gilbert*, 156 Ill. 2d at 520. The supreme court quoted the Wisconsin Supreme Court in *Kashishian v. Port*, 167 Wis. 2d 24, 481 N.W.2d 277 (1992), which observed that hospitals spent billions of dollars to persuade those in need of medical services to obtain those services at a specific hospital. *Gilbert*, 156 Ill. 2d at 520. The court concluded that, in light of the realities of modern hospital care, "liability attaches to the hospital only where the treating physician is the apparent or ostensible agent of the hospital. If a patient knows, or should have known, that the treating physician is an independent contractor, then the hospital will not be liable." *Gilbert*, 156 Ill. 2d at 522. In a separate discussion on apparent authority, the *Gilbert* court extended the same principle of "patient knowledge" to the doctrine of apparent authority and set forth the elements of a cause of action under a theory of apparent authority as follows:

> "For a hospital to be liable under the doctrine of apparent authority, a plaintiff must show that: (1) the hospital or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence." *Gilbert*, 156 Ill. 2d at 525.

■ Thus, despite the fact that the contract between Mount Sinai and Dr. Schikman provided that Dr. Schikman was to be an independent contractor for the hospital, the relevant inquiry here, under *Gilbert*, in determining whether Dr. Schikman was an actual or apparent agent of Mount Sinai is whether Edgardo knew that Dr. Schikman was an independent contractor. After reviewing the record in this case, we believe the facts support a finding that Edgardo did not know that Dr. Schikman was an independent contractor.

At trial, Dr. Schikman testified that he had a contract with Mount Sinai to provide service to hospital patients who came to the diabetes

clinic. That contract also required him to see hospital employees who were injured on the job, free of charge. Dr. Schikman further testified that he was not allowed to use his office in the hospital's diabetic clinic to provide service to his private patients. Edgardo registered at the admitting desk on the first floor of the hospital before seeing Dr. Schikman on the fifth floor. Based on these facts, we believe the evidence established that Mount Sinai and Dr. Schikman acted in a manner that would lead a reasonable person to conclude that Dr. Schikman was an agent of Mount Sinai, that the hospital had knowledge of the appearance of authority of Dr. Schikman and that Edgardo acted in reliance upon the conduct of Dr. Schikman. UHS and Mount Sinai argue that the fact that Dr. Parmet referred Edgardo to Dr. Schikman indicates that Edgardo saw Dr. Schikman irrespective of his connection with the hospital. However, this contention is unpersuasive. Rather, we conclude that Dr. Schikman was acting as an agent of the hospital when he saw Edgardo pursuant to his contract with the hospital to see hospital employees, and that Edgardo did not know that Dr. Schikman was an independent contractor. Therefore, UHS and Mount Sinai were vicariously liable.

■ UHS and Mount Sinai further contend that the jury instructions on agency were insufficient. We disagree. The trial court has considerable discretion in determining the form in which a jury instruction shall be given. *Hajian v. Holy Family Hospital*, 273 Ill. App. 3d 932, 937, 652 N.E.2d 1132 (1995). The refusal to give an instruction will result in a new trial only where the party shows serious prejudice to the party's right to a fair trial. *Hajian*, 273 Ill. App. 3d at 937. Furthermore, the propriety of an instruction depends on whether the instructions, considered as a whole, were sufficiently clear to avoid misleading the jury, while at the same time fairly and correctly stated the law. *Hajian*, 273 Ill. App. 3d at 937.

■ At trial, UHS and Mount Sinai offered jury instructions numbers 5 and 6, which emphasized that the right to control the way in which work is performed is the predominant factor in determining the existence of a principal-agent relationship. Instruction number 5 was a modified version of the standard Illinois Pattern Jury Instructions, Civil, No. 50.10 (3d ed. 1995) (hereinafter IPI Civil 3d). IPI Civil 3d No. 50.10 provides the factors by which a jury can determine whether a principal-agent relationship existed and includes the right to direct and control the method and manner of work and the method of payment. Instruction number 5 differed slightly from IPI Civil 3d No. 50.10 in that it repeated and therefore emphasized the factor of the right to control. UHS and Mount Sinai argue that their instructions properly reflected the rules in *Gasbarra v. St. James Hospital*,

85 Ill. App. 3d 32, 406 N.E.2d 544 (1979), *Dumas v. Lloyd*, 6 Ill. App. 3d 1026, 286 N.E.2d 566 (1972), *Greene v. Rogers*, 147 Ill. App. 3d 1009 (1986), and *Heubner v. Galesburg Cottage Hospital*, 215 Ill. App. 3d 129, 574 N.E.2d 1194 (1991), that the right to control and method of payment are the two dominant factors in determining whether a principal-agent relationship exists. However, these cases are inapposite. The matter of emphasizing in jury instructions that the right to control and method of payment are dominant factors in determining whether a principal-agent relationship exists was not addressed in any of these cases. In particular, we note that only *Gasbarra* was decided by a jury. Neither *Greene*, *Heubner*, nor *Dumas* involved instructions in any way. *Greene* and *Heubner* were summary judgment cases. *Dumas* ended with the entry of a directed verdict in favor of the defendants at the close of the plaintiff's case. In contradistinction to these three cases cited by defendants, the case *sub judice* was tried to completion before a jury. Further, the instructions tendered to the jury clearly set forth the various factors that should be considered, including the right to control and the method of payment. Additionally, the instructions clearly and accurately stated the law. Therefore, we cannot say that the trial court erred in its refusal to tender defendants' instructions.

## II

■ Defendants next contend that the jury instructions on proximate cause were insufficient because there was no basis in the record for giving the long form of IPI Civil 3d No. 15.01 and IPI Civil 3d No. 12.04.

IPI Civil 3d No. 15.01 provides:

> "When I use the expression 'proximate cause,' I mean any cause, which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]"

The long form of the instruction includes the bracketed language which, according to the notes to the instruction, should be included only when there is evidence that the acts of someone or something other than the negligence of the parties was also a proximate cause of the injuries. *Ostry v. Chateau Ltd. Partnership*, 241 Ill. App. 3d 436, 441, 608 N.E.2d 1351 (1993); *Webb v. Angell*, 155 Ill. App. 3d 848, 855, 508 N.E.2d 508 (1987). The decision to give the short form of the instruction is discretionary, even in cases where there is no evidence that something or someone other than the parties was a proximate cause of the injuries. *Ostry*, 241 Ill. App. 3d at 441. More-

over, the notes to the instruction provide that it will rarely be error to give the long form of the instruction.

■ IPI Civil 3d No. 12.04 was also issued to the jury and provides:

> "More than one person may be to blame for causing an injury. If you decide that the defendants were negligent and that their negligence was a proximate cause of injury to the plaintiffs, it is not a defense that some third person who is not a party to the suit may also have been to blame."

The notes to IPI Civil 3d No. 12.04 provide that the instruction should be used only in cases where negligence of a nonparty may have concurred or contributed to the cause of the plaintiff's injury. Defendants argue that the trial court erred by granting plaintiffs' motion *in limine* to exclude evidence of any other doctor's treatment or diagnosis of Edgardo's condition and allowing IPI Civil 3d Nos. 15.01 and 12.04 for which there was no supporting evidence presented at trial. We find no merit in defendants' argument.

■ Our review of the record shows that both instructions were properly given because evidence of a contributing or concurring cause of Edgardo's injuries was heard by the jury. The record indicates that more than one expert witness testified that prior treating physicians had diagnosed Edgardo with migraines and not polycythemia rubra vera. Moreover, in closing argument, defense counsel for Dr. Schikman argued in pertinent part:

> "And every physician in this case that saw the plaintiff that had an opportunity to, prior to the stroke, had an opportunity to review what was wrong with him, to do whatever tests they wanted to do and to make a diagnosis concluded the same that Dr. Schikman did, a migraine.
>
> * * *
>
> And those witnesses, Dr. Upton from Canada; Dr. Wagner from New York; Dr. Kessler from Washington or Virginia, had the benefit of seven years to look at a laundry list of records to conclude in retrospect, must have been P vera [polycythemia rubra vera].
>
> Yet none of the doctors and—every doctor diagnosed migraine before that."

From this evidence, the jury could conclude that the failure of other doctors to accurately diagnose Edgardo's condition contributed to his injuries. Therefore, since evidence of other concurrent or contributing causes of Edgardo's injuries was heard by the jury, we believe the trial court did not abuse its discretion in issuing instructions IPI Civil 3d Nos. 15.01 and 12.04.

### III

UHS and Mount Sinai also contend that the trial court erred in

permitting improper testimony by Richard Snow, the former managing director of Mount Sinai. Specifically, they argue that: (1) the trial court allowed Snow to offer irrelevant testimony about a separate contract that Dr. Schikman had with the hospital to administer the Optifast program and about a separate arrangement he had with Dr. Chow, another physician at Mount Sinai, who specialized in treating patients who only spoke Japanese; (2) the trial court allowed Snow to improperly speculate that patients calling to make appointments at the diabetes center would not be told that Dr. Schikman was an independent contractor; (3) that Snow was allowed to testify over objection that the "independent contractor" provision in Dr. Schikman's contract with the hospital was included in order to limit the hospital's liability; and (4) that Snow improperly testified that, after he had discussed the case with Mount Sinai's general counsel, he stated, "this certainly won't help us." We see no merit in these contentions.

It is well settled that evidence is relevant under Illinois law when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Lundquist v. Nickels*, 238 Ill. App. 3d 410, 427, 605 N.E.2d 1373 (1992). Furthermore, the trial court's determination with respect to the admissibility of evidence is a matter within its sound discretion and will be disturbed on appeal only where the court has manifestly abused its discretionary powers. *Lundquist*, 238 Ill. App. 3d at 427.

UHS and Mount Sinai have not persuaded us that the trial court abused its discretion and erred in permitting certain testimony by Snow. Relative to Snow's testimony about his comment to Mount Sinai's general counsel, we point out that the act of promptly sustaining an objection and instructing the jury to disregard such argument has generally been viewed as sufficient to cure any prejudice. *Hartman v. Pittsburgh Corning Corp.*, 261 Ill. App. 3d 706, 729, 634 N.E.2d 1133 (1994). Here, the trial court sustained an objection to that testimony and promptly instructed the jury to disregard the statement. Therefore, we see no error here. Furthermore, Snow's testimony about his contract with the hospital to administer Optifast and his arrangement with Dr. Chow was probative of his relationship with Mount Sinai. Snow's comments about whether patients calling the hospital would be told that Dr. Schikman was an independent contractor, the purpose of the independent contractor provision in Dr. Schikman's contract with the hospital and his views regarding the hospital's case were relevant as to whether Dr. Schikman was an agent or an independent contractor. Thus, we see no error in permitting this testimony. However, assuming *arguendo* that error occurred

regarding these matters, UHS and Mount Sinai have failed to persuade us of any resultant prejudice.

## IV

Dr. Schikman argues that the trial court erred in denying his motion to bar the testimony of plaintiffs' expert witness, Dr. Wagner. Defendant asserts that the testimony presented by Dr. Wagner was cumulative to that of plaintiffs' other experts, Dr. Kessler and Dr. Upton. The admission of evidence is left to the discretion of the trial court, and the trial court may, in its discretion, exclude cumulative testimony. *Hubbard v. Sherman Hospital*, 292 Ill. App. 3d 148, 155, 685 N.E.2d 648 (1997). However, the trial court's decision may not be disturbed absent a clear abuse of discretion. *Hubbard*, 292 Ill. App. 3d at 155.

We do not believe the testimony of Dr. Wagner was cumulative to the testimony of Dr. Kessler and Dr. Upton. Dr. Upton was called to testify as a neurologist. Dr. Kessler was called to testify as a hematologist. And Dr. Wagner was called to testify to the standard of care as an internist. Therefore, we hold that the trial court correctly denied Dr. Schikman's motion to bar Dr. Wagner's testimony.

## V

We next address defendants' claim that the jury verdict for $11,962,390 was excessive. The amount of a verdict is generally a factual question for the discretion of the jury. *Swaw v. Klompien*, 168 Ill. App. 3d 705, 716, 522 N.E.2d 1267 (1988); *Clark v. City of Chicago*, 88 Ill. App. 3d 760, 765, 410 N.E.2d 1025 (1980). Courts are reluctant to interfere with the jury's exercise of discretion in this area. *Chambers v. Rush-Presbyterian-St. Luke's Medical Center*, 155 Ill. App. 3d 458, 467, 508 N.E.2d 426 (1987). The test to be used when examining a verdict challenged as being excessive is whether the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation, or is so large as to shock the judicial conscience. *Johanek v. Ringsby Truck Lines, Inc.*, 157 Ill. App. 3d 140, 155, 509 N.E.2d 1295 (1987), citing *LeMaster v. Chicago Rock Island & Pacific R.R. Co.*, 35 Ill. App. 3d 1001, 343 N.E.2d 65 (1976). A reasonable balance should be made between the amount of damages and the extent of the injuries; however, there is no precise rule by which an award of damages can be fixed in a personal injury action because such compensation does not lend itself to mathematical computation. *Johanek*, 157 Ill. App. 3d at 155.

Evidence presented at trial established that Edgardo was 29 years old when he had a stroke. As a result of the stroke, he has a speech impediment called expressive aphasia or Broca's aphasia,

which prevents him from speaking. He uses hand gestures and the assistance of a computer device. Edgardo continues to suffer from episodes of seizure and has difficulty in overall mobility and language function. He has suffered permanent disfigurement to the right side of his entire body and has impaired vision. Before the stroke, Edgardo enjoyed biking, running and walking. He can no longer engage in these activities. Testimony also established that he suffers from pain intermittently and that his future care needs include physical therapy, occupational therapy, speech therapy and psychiatric care. Edgardo's 74-year-old father has moved in with him and stays with Edgardo all day.

Based on the evidence, we cannot say that the award is so large as to shock the judicial conscience. Nor can we say that the size of the verdict is the result of prejudice or passion on the part of the jury.

## VI

Finally, plaintiffs cross-appeal and argue that the trial court erred in exercising remittitur and reducing the jury's award for loss of services from $500,000 to $200,000. Defendants contend that plaintiffs failed to present any evidence of loss of services to support the award and request a new trial, a new trial on damages, or a remittitur of the award.

A jury's award will not be subject to remittitur where it falls within the flexible range of conclusions which can be reasonably supported by the facts. *Riley v. Koneru*, 228 Ill. App. 3d 883, 888, 593 N.E.2d 788 (1992); *Wagner v. City of Chicago*, 254 Ill. App. 3d 842, 860, 626 N.E.2d 1227 (1993); *Guerrero v. City of Chicago*, 117 Ill. App. 3d 348, 352, 453 N.E.2d 767 (1983). A trial judge does not have the power to speculatively and gratuitously negate a jury's verdict; rather, a basis in fact, evidenced by the record, must exist showing the award was erroneous or was the result of prejudice or passion before it can be reduced. *Batterton v. Thurman*, 105 Ill. App. 3d 798, 804, 434 N.E.2d 1174 (1982).

Here, the trial court reduced the jury's award for loss of services by $300,000. However, the trial court did not indicate a basis in fact to show that the award was erroneous. Regarding the award for loss of services, in closing arguments to the jury, the plaintiffs recommended damages in the amount of $500,000, while the defendants argued that no damages should be awarded. The evidence presented during the trial revealed that Edgardo regularly had taken his family on various outings such as to the beach, Great America and the zoo. Ruby Dahan also testified that, prior to his stroke, Edgardo would

usually take part in such outings on the weekends while she was working. Edgardo's son, Andrew Nicholas Dahan, who was eight years old at the time of trial, also testified to these activities and added that, prior to his stroke, Edgardo would take him and his friends to various events and activities and to family affairs. We cannot say that this testimony was insufficient to support the jury's award for loss of services. See *Wood v. Mobil Chemical Co.*, 50 Ill. App. 3d 465, 478, 365 N.E.2d 1087 (1977) (evidence of the general usefulness, industry and attention to the home and within the family, decision-making, and rearing and disciplining of children supported giving standard jury instruction on loss of services); see also generally *Pfeifer v. Canyon Construction Co.*, 253 Ill. App. 3d 1017, 1030, 628 N.E.2d 746 (1994) (material services are highly personal to and generally flow from the particular relationship between specific spouses). Accordingly, since the trial court articulated no basis for reducing the jury's award, we hold that the trial court erred in granting a remittitur.

For the reasons stated we affirm the general verdict of the jury. The remittitur awarded to defendants is reversed and the judgment entered pursuant thereto is vacated. The original jury award for loss of services is reinstated and judgment is ordered entered thereon.

Affirmed in part and reversed in part; judgment of trial court vacated and judgment ordered entered in favor of plaintiffs on the jury's verdict.

McNULTY, P.J., concurs.

JUSTICE RAKOWSKI, specially concurring:

I respectfully submit that the jury erred in concluding that Dr. Schikman was an actual agent of the hospital. There is no evidence suggesting such a conclusion. Moreover, the lack of control by the hospital over Dr. Schikman's methods of diagnosis and treatment, and the method of payment all clearly indicate that he is an independent contractor.

I also do not agree with the following statement from page 7 of the majority opinion:

> "[T]he relevant inquiry here, under *Gilbert*, in determining whether Dr. Schikman was an actual or apparent agent of Mount Sinai is whether Edgardo knew that Dr. Schikman was an independent contractor." 295 Ill. App. 3d 776.

The issue in *Gilbert* was whether a hospital can be found vicariously liable for the acts of an independent contractor physician under the

doctrine of apparent authority. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 514 (1993). The case has nothing whatsoever to do with actual authority.

I do, however, concur that the question of apparent authority was properly a fact question for the jury to determine.

I also concur in all other respects with the majority opinion.